UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE URBAN FARMER, INC. | ) | Case No. 13-22417 ABC |
| | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| In re: | ) | |
| | ) | Case No. 13-22419 SBB |
| DKR LAND DEVELOPMENT | ) | Chapter 11 |
| ENTERPRISES, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**MOTION SEEKING EXPEDITED ENTRY OF ORDERS FOR: (i) JOINT ADMINISTRATION; (ii) APPROVAL OF PRE-PETITION PRIORITY WAGE CLAIMS AND BENEFITS; AND (iii) AUTHORIZING DEBTOR TO INCUR POST-PETITION SECURED INDEBTEDNESS, AND NOTICE OF IMPENDING HEARING THEREON**

The Urban Farmer Inc. ("Urban Farmer") and DKR Land Development Enterprises, LLC ("DKR") Debtors-in-Possession herein (collectively "Debtors"), by and through their undersigned counsel Sender Wasserman Wadsworth, P.C., and for their Motion Seeking Expedited Entry of Orders for: (i) Joint Administration; (ii) Approval of Pre-Petition Priority Wage Claims and Benefits; and (iii) Authorizing Debtor to Incur Post-Petition Secured Indebtedness, and Notice of Impending Hearing Thereon, pursuant to L.B.R. 2081-1 ("Motion for Expedited Orders"), hereby state as follows:

**INTRODUCTION AND BACKGROUND**

1. The Debtors filed for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 19, 2013 (the "Petition Date"), and are operating as a Debtors-in-Possession.

2. By this Motion, the Debtors seek entry of three orders: (i) an order granting joint administration of Urban Farmer and DKR's bankruptcy cases; (ii) an order approving pre-petition priority wage claims of Urban Farmer; and (iii) an order authorizing Urban Farmer to incur post-petition secured indebtedness.

3. Urban Farmer was formed in 1983 and is a full service landscape, irrigation and reclamation company. Urban Farmer currently employs over 100 employees and conducts business in Colorado throughout the Front Range, the Western Slope and several areas in the Rocky Mountains. Urban Farmer's customers include individuals, businesses, contractors and municipalities. Urban Farmer conducts business out of its headquarters located at 3431 E. 86th Avenue, Thornton, Colorado (the "Property"). The Property is approximately four parcels totaling 12.16 acres. The Property consists of offices, a warehouse/maintenance building, parking lots, storage/service lots, and land committed to plant cultivation.

4. The Property is wholly-owned by DKR. On or about August 29, 2009, Urban Farmer executed two promissory notes (the "Notes") from Citywide Banks ("Citywide"). The respective original principal balances of the Notes were $2,500,000 and 827,319.97. Citywide asserts that the Notes are secured by the Property and Urban Farmer's inventory, accounts, instruments, equipment and general intangibles (the "Urban Farmer Collateral"). According to correspondence from Citywide's counsel, the Notes are allegedly in default. Citywide has accelerated the amounts due under the Notes and alleges that it is owed an aggregate unpaid balance as of July 2, 2013 of $2,695,784.53. Citywide has demanded that all accounts and accounts receivable from the Urban Farmer Collateral be immediately paid to Citywide to be applied to the unpaid balance of the Notes.

5. The Property is also subject to liens in favor of Zions Bank and Small Business Finance Corporation. Furthermore, some of the Urban Farm Collateral, specifically equipment, is subject to purchase money security interests and other equipment is being leased by Urban Farmer.

6. Urban Farmer's assets also consist of 128 unencumbered motor vehicles and trailers (the "Unencumbered Vehicles")

7. Urban Farmer's equity security holders consist of the following two parties: (1) Karen Tollefson ("Ms. Tollefson"), who owns 51%; and (2) the Urban Farmer Qualified Subchapter S Trust that owns 49%. DKR's equity security holders consist of two parties: (1) Ms. Tollefson, who owns 97%; and (2) The David L. Tollefson Family Trust that owns 3%. Ms. Tollefson is the President of Urban Farmer and the Managing Member of DKR and controls both entities. David Tollefson is Ms. Tollefson's deceased husband.

8. On July 19, 2013, Urban Farmer entered into an agreement with United Fire & Casualty Company ("United") titled Agreement for Use of Cash Collateral, Assumption or Rejection of Contracts, Post-Petition Financing and Relief from Automatic Stay (the "United Agreement").

9. A receiver has not been appointed to take possession and control of Debtors' property.

## MOTION FOR JOINT ADMINISTRATION

10. Debtors request the entry of an Order allowing for the joint administration of their respective cases under Bankruptcy Rule 1015 and Local Rule 1015.1.

11. Pursuant to Bankruptcy Rule 1015(b), if "two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." An "affiliate" includes a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor . . ." 11 U.S.C. § 101(2)(B).

12. Urban Farmer and DKR are affiliates. As stated above, Ms. Tollefson directly owns more than 20 percent of both Urban Farmer and DKR.

13. Furthermore, given the interlinked commercial relationship among the Debtors, joint administration of these cases will provide significant administrative convenience without harming the substantive rights of any party in interest. The joint administration of these cases will not give rise to any conflict of interest among the Debtors' estates, nor will joint administration adversely affect the Debtors' respective creditors, because the Debtors seek only administrative, not substantive, consolidation of their estates. Bankruptcy Rule 1015(b) provides, in pertinent part, that "[i]f . . . two or more petitions are pending in the same court by or against . . . a debtor and an affiliate, the court may order a joint administration of the estates." Fed. R. Bankr. P. 1015(b). As described above, the Debtors are affiliates within the meaning of the Bankruptcy Code. Accordingly, the Court is authorized to grant the relief requested herein.

14. The Debtors assert that joint administration of the two cases is also in the interest of judicial economy as it will avoid duplicative pleadings in separately administered cases. Both debtors face similar issues with respect to their efforts to reorganize.

## MOTION TO APPROVE PAYMENT OF PRE-PETITION PRIORITY WAGE CLAIMS AND BENEFITS

15. Urban Farmer currently has over 100 employees that are critical to continued operations. A true and correct copy of the employee list with anticipated payroll is attached hereto as <u>Exhibit 1</u>. However, the anticipated payroll does not include payroll for July 15, 16, 17 and 18, 2013. Timecards for these days will not be returned until July 22, 2013. The Debtor intends to retain as many employees as possible during this reorganization and thus requests payment of prepetition wages, salaries, and expenses.

16. Urban Farmer asserts that if its employees are not paid pre-petition compensation and benefits, then employees would likely resign in en masse. En masse resignations would significantly disrupt Urban Farmer's operations, cause irreparable harm to the estate and significantly impede an effective Debtors' reorganization.

17. The obligations the Debtor seeks to pay represent a small percentage of its pre-petition debts. Honoring these obligations will enable the Debtors to continue their business operations and preserve the ongoing value for their creditors and reorganization efforts. Without the support of the Urban Farmer's employees, the estate and its creditors may suffer irreparable harm.

18. Additionally, Debtors assert that there will be sufficient assets and revenues in the estate to satisfy the Chapter 11 priority claims in full.

### MOTION AUTHORIZING URBAN FARMER TO INCUR POST-PETITION SECURED INDEBTEDNESS

19. Urban Farmer has entered into the United Agreement, subject to bankruptcy court approval, providing for postpetition financing. A true and accurate copy of the United Agreement is attached hereto as Exhibit 2.

20. In accordance with the terms of the United Agreement as made and entered on July 19, 2013, the Urban Farmer requests that this Court, pursuant to 11 U.S.C. §§ 105(a), 361, 363, and 364 and Fed. R. Bankr. P. 2002, 4001, 6003 and 9014: (a) authorize the Debtor to incur post-petition secured indebtedness; and (b) grant United the requested security interest.

21. United is not a pre-Petition Date creditor of Debtors.

22. United issued performance and payment bonds securing obligations of Urban Farmer to perform work and pay for labor and materials on numerous projects described in Schedule 2 of Exhibit 2 (the "Bonded Projects"). The purpose of the United Agreement is to provide financing to Urban Farmer to enable it to continue operations and to assure that receivables from the Bonded Projects are applied to respective payables and project costs for each specific bonded project.

23. The following material terms of the United Agreement are as follows:

   a. United will make weekly advances to Urban Farmer for the amounts set forth in the last line of the budget set forth in Schedule 1 of the United Agreement.

   b. Urban Farmer will use the weekly advances to fund operations. The aggregate outstanding amount advanced will not exceed $250,000, which shall accrue interest at 8% per annum. Receivables recovered by reason of the advance of funds will be deposited into a bank account designated as the Urban Farmer Bonded Receivables Account. Monies in said account will be disbursed in the following priority: (1) to satisfy accounts payable and other direct job costs for the specific Bonded Project; (2) to pay for Urban Farmers' ratable portion of Urban Farmer's operating and administrative expenses, including payroll, incurred on the Bonded Project; and (3) and excess amounts will be deposited into Urban Farmer's account designated Urban Farmer Cash Collateral Account.

      c. All cash collateral owned by Urban Farmer on the Petition Date and all post-Petition Date cash collateral shall be deposited into the Urban Farmer Cash Collateral Account.

      d. Urban Farmer will consult with United regarding whether to reject the following three jobs identified on Schedule 2 of the United Agreement: (1) Burlingame Ranch Phase II; (2) SDS Water Treatment Plant; and (3) the I-70 Widening at Grand Junction. Furthermore, within twenty days, Urban Farmer shall move to reject any other executory contracts it intends to reject.

      e. To provide adequate protection for the weekly advances and use of cash collateral, United will be granted a first-priority lien in the motor vehicles, trailers and equipment identified in Schedule 3 of the United Agreement, which includes the Unencumbered Vehicles.

24. In the event some or all of the funds related to the United Agreement are cash collateral, Urban Farmer acknowledges that authorizing the use of the cash collateral is subject to the provisions of 11 U.S.C. § 363(c)(2) and the rationale articulated in *Chaussee v. Morning Star Ranch Resorts Company*, 64 B.R. 818 (Bankr. D. Colo. 1986).

25. Urban Farmer requires authorization of the United Agreement and incurring post-petition secured indebtedness to operate its business and prevent diminution in value of the assets of the estate. Urban Farmer will use the United Agreement to fund its post-petition operations.

26. Absent authorization of the United Agreement, Urban Farmer's operations will likely cease and it will be unable to reorganize its debts, which would result in a significantly reduced recovery for the Debtors' estates. If the United Agreement is authorized, the Debtors will be able to maximize the value of its estates through the continuation of Urban Farmer's business.

27. Urban Farmer intends to utilize the financing obtained via the United Agreement in substantial accordance with the budget attached hereto as <u>Exhibit 3</u> (the "Budget").

28. The equities of this case favor approval of the United Agreement. Approval of the United Agreement advances strong public policies favoring continuation of jobs, preservation of going concern values, and rehabilitation of distressed debtors. *See* H.R. Rep. 834, 103rd Cong., 2nd Sess. 27 to 29 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994).

29. Approval of the United Agreement is in the best interest of the Debtors, their creditors, and the estates as it will allow Urban Farmer to maintain its ongoing business operations, generate revenue, and provide the Debtors with an opportunity to propose a meaningful plan of reorganization. Urban Farmer further asserts that the use of the United Agreement is the best source of financing to continue operations.

30. Within seven days of an interim order approving the this motion, Urban Farmer will seek a final order approving the United Agreement.

**WHEREFORE,** the Debtors respectfully requests that this Court enter orders in the forms attached: (a) granting joint administration of Urban Farmer and DKR's bankruptcy cases; (b) approving pre-petition priority wage claims of Urban Farmer; (c) authorizing Urban farmer to incur post-petition secured indebtedness; and (d) for such other and further relief as the Court deems just.

Dated this 19th day of July, 2013.

    Respectfully submitted,

    SENDER WASSERMAN
    WADSWORTH, P.C.

    */s/ Aaron J. Conrardy*
    _____
    Harvey Sender, #7546
    Aaron J. Conrardy, #40030
    1660 Lincoln Street, Suite 2200
    Denver, Colorado 80264
    Phone: (303) 296-1999/Fax: (303) 296-7600
    hsender@sww-legal.com
    aconrardy@sww-legal.com